```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


MARIAN HUNTER                               CIVIL ACTION

VERSUS                                      NO: 05-2698

GOODWILL INDUSTRIES SELA,                   SECTION: "R"(4)
INC.
```

## ORDER AND REASONS

Before the Court is defendant Goodwill Industries' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the Court GRANTS in part and DENIES in part defendant's motion.

### I. BACKGROUND

Plaintiff Marian Hunter, an African-American woman, was employed as a Career Development Specialist with defendant Goodwill Industries of Southeastern Louisiana from October 16, 2000 until she was terminated on December 13, 2004. At the time she was terminated, Hunter was 64 years old. On June 27, 2005, Hunter sued Goodwill on account of her termination, which Hunter alleges was effectuated because of her race and/or age, as well

as in retaliation for exercising her free speech rights under the First Amendment.[1]  Goodwill contends that Hunter was terminated for work performance-related reasons.  Goodwill now moves for summary judgment and asks that all of Hunter's claims be dismissed.

## II. LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor."  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

---

[1] The Court notes that this suit was initially dismissed without prejudice on June 13, 2006 for failure to effect service of the defendant.  (R. Doc. 9).  Plaintiff then filed an amended complaint on August 18, 2006, re-urging most of her original claims against defendant.  (R. Doc. 16).  In light of Goodwill's motion for a more definite statement of plaintiff's claims under Rule 12(e) of the Federal Rules of Civil Procedure, plaintiff filed a second amended complaint on December 15, 2006.  (R. Doc. 29).  The allegations in the second amended complaint are now before the Court in this motion for summary judgment.

(1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial.  *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**III. DISCUSSION**

    **A.   Race and Age Discrimination Claims**

        *1.   Applicable Standard*

Title VII of the 1964 Civil Rights Act provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or

national origin." 42 U.S.C. § 2000(e)-2(a). Similarly, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A claim under the ADEA comes under the same analytical framework as a claim for racial discrimination under Title VII. *See Evans v. City of Houston*, 246 F.3d 344, 349 (5th Cir. 2001).

A Title VII/ADEA plaintiff bears the initial burden to prove a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). An employee can use either direct or circumstantial evidence to prove a case of intentional discrimination. *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994). The Fifth Circuit has noted that direct evidence is rare in cases such as this one. *See id.* "Direct evidence is evidence which, if believed, proves the fact of [intentional discrimination] without inference or presumption." *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). The Fifth Circuit has defined "direct evidence" as including "any statement or written document showing a discriminatory motive on

4

its face." *Portis*, 34 F.3d at 329 (citing *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990). Here, the Court concludes that plaintiff has not submitted any facts that provide direct evidence of defendants' alleged race or age discrimination.

To establish a *prima facie* case of employment discrimination under Title VII or the ADEA using circumstantial evidence, a plaintiff must show: (1) that she is a member of a protected class; (2) that she was qualified for her position; (3) that she was subjected to an adverse employment action; and (4) that she was replaced by someone outside the protected class . *See Evans v. City of Houston*, 246 F.3d 344, 350 (5th Cir. 2001); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999). If the Court finds that plaintiff is successful in establishing a *prima facie* case of discrimination or retaliation, then the burden shifts to the defendants to produce a legitimate, nondiscriminatory reason for their employment actions. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). If the defendants articulate such a justification, then the inference created by the plaintiff's *prima facie* case "drops out of the picture" and the Court must "decide the ultimate question: whether [the] plaintiff has proved [intentional discrimination]." *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511-12 (1993). In doing so, the Court can take into consideration any

evidence presented by plaintiff demonstrating that defendants' explanation for their actions were a pretext for discrimination or retaliation.  *See Evans*, 246 F.3d at 350 (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000)). "Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  *Id.* at 148.

To determine whether plaintiff can survive a motion for summary judgment, the Court will consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law."  *Reeves*, 530 U.S. at 148-49.

      2.   *Plaintiff's Race Discrimination Claim*

The Court finds that Hunter has failed to establish a *prima facie* case of race discrimination.  This is because Hunter cannot show that she was replaced by someone outside of her protected class, a necessary element of a *prima facie* case of race discrimination.  It is uncontested that Hunter was terminated on December 13, 2004 from her position as a career development specialist, "in conjunction with the termination of four other

Career Development Specialists." (R. Doc. 47, Def.'s Ex. 4). All five of the terminated career development specialists were African-American. (*Id.*). The four remaining career development specialists at that time were African-American. (*Id.*). Goodwill replaced the five terminated individuals with four African-Americans and one Caucasian. (*Id.*). As plaintiff concedes in her opposition to this motion for summary judgment, "it is not clearly defined by Goodwill who the Caucasian female hired after Hunter was fired replaced." Plaintiff has not presented the Court with any evidence that she was in fact replaced by the Caucasian employee aside from her subjective belief that she was. In *Guldin v. Conoco*, the Fifth Circuit held that a plaintiff's "own self-serving and conclusory affidavit" that did not provide any foundation for his conclusion that a specific person replaced him was "no bar to entry of summary judgment" as to his Title VII claim. 37 Fed.Appx. 712, 2002 WL 1220015, at *3 (5th Cir. 2002). Thus, plaintiff's unsubstantiated allegation here is insufficient to carry plaintiff's burden of showing that she was replaced by someone outside of her protected class.

Moreover, even if plaintiff could establish a *prima facie* case of race discrimination, her claim nevertheless fails under the *McDonnell Douglas* framework. Goodwill asserts as its legitimate, nondiscriminatory reason for terminating Hunter that

7

her job performance was poor and that she did not adhere to job requirements.  Scott Mire, vice president of human resources at Goodwill during plaintiff's employment, states in an affidavit that two of Hunter's supervisors recommended to him that Hunter should be terminated "as a result of poor work performance, as evidenced by her improper and inaccurate documentation and outright fabrication of documentation . . . ."  (R. Doc. 47, Def.'s Ex. 3).  Specifically, Mire avers that Michael Menzies, one of Hunter's supervisors, discovered during a review of Hunter's case files and documentation that Hunter had falsified an entry into Goodwill's computer system such that her action resulted in the case file remaining open in the Goodwill system at a time when Goodwill was under a directive from the State of Louisiana to remove from its system inactive case files.  (Id.; see also R. Doc. 47, Def.'s Ex. 2).  Mire also states that Menzies informed him of Hunter's deficient performance and documentation as to another Goodwill program participant.  (R. Doc. 47, Def.'s Ex. 3).  In light of this evidence, Mire avers that he "agreed with the recommendation and the decision was made to terminate Marian Hunter."  (Id.).  He then states: "Marian Hunter was terminated from her position as CDS at Goodwill for poor job performance, failure to adhere to the job requirements, and falsification of program participants' case files."  (Id.).

Moreover, two other Goodwill employees who were present at the meeting that ultimately resulted in Hunter's termination – Frances Williamson, director of human resources, and Wanda Jefferson, then-career development specialist - aver that Hunter was fired for work performance reasons.  (R. Doc. 47, Def.'s Exs. 1, 4).  If believed by the trier of fact, this reason would support a finding that unlawful discrimination was not the cause of plaintiff's termination.  Therefore, the presumption raised by plaintiff's *prima facie* case disappears.  *Reeves*, 530 U.S. at 143.

At this point, plaintiff is given the opportunity to demonstrate that Goodwill's articulated rationale is merely a pretext for discrimination.  *Id.*  If plaintiff can raise a genuine issue of material fact as to whether she has established pretext, that will suffice to avoid summary judgment.  *Id.* ("[P]laintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence.") (internal quotations and citations omitted).  Here, plaintiff relies on her own conclusory, self-serving statements in her affidavit that she received good evaluations and did not falsify or fabricate any program participants' entries or files.  (R. Doc. 72, at 28). She also submits the affidavit of Maynell Roth, an African-

American who once worked with Hunter at Goodwill.  (*Id.* at 26). Roth, who was terminated from her position at Goodwill at about the same time as Hunter, avers that Hunter is "hard-working" and "was called upon to help other CDS's close their files when they could not catch up."  (*Id.* at 27).  Neither affidavit specifically addresses the incidents cited by Goodwill as the reason for Hunter's termination.  In addition, the Court notes that Roth filed suit against Goodwill on the same day as Hunter did, asserting similar causes of action.  *See Roth v. Goodwill Industries, Southeast Louisiana, Inc.*, Civ. Action No. 05-2691 (Lemmon, J.).  Finally, Hunter asserts in her opposition to this summary judgment motion that Mire "had fun for making racial slurs and remarks.  Even though it was believed that he was suspended a couple of times for such actions, he never ceased from such racial slurs."  Hunter provides no factual support for these allegations and in fact testifies in her deposition that she never personally heard Mire make any remarks of this type, nor could she provide any further details as to any racially insensitive comments as to what he may have said, when, and to whom.

The Fifth Circuit has stated that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."  *Douglass v. United Servs. Auto.*

*Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).  Further, "[i]t is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason."  *Id.* at 1430.  The Court therefore finds that Hunter has not presented sufficient evidence to defeat summary judgment on her race discrimination claim.

        3.   *Plaintiff's Age Discrimination Claim*

Goodwill concedes in its motion for summary judgment that plaintiff may be able to state a *prima facie* case of age discrimination because all five of the Career Development Specialists hired after plaintiff's termination were under the age of forty.[2]  However, Goodwill again asserts that its legitimate, nondiscriminatory reason for terminating Hunter was that her job performance was poor and that she did not adhere to job requirements.  *See* discussion, *supra*.  Goodwill further argues that Hunter has not submitted evidence demonstrating that its proffered nondiscriminatory reason is a mere pretext for age discrimination.

In response, plaintiff submits her own affidavit testimony,

---

[2] The protected class under the ADEA is persons at least forty years old.  *See* 29 U.S.C. § 631(a).

as well as that of Roth.  Hunter states that "at a meeting of the CDS's one of the supervisors, Michael Menzies advised of Goodwill's intent to replace older CDS' with younger ones."  (R. Doc. 72, at 29).  Roth states in her affidavit that "she was in a meeting where Michael Menzies advised that all old CDS's at Goodwill will be replaced with younger ones."  (*Id.* at 26).  Plaintiff asserts that this meeting took place in October 2004, which was approximately two months before she was terminated.  (*Id.* at 31).  Moreover, in seeking to challenge the testimony of Hunter and Roth as to Menzies's age-related comments, Goodwill submits deposition testimony from both individuals that actually reinforces their respective affidavit statements regarding this meeting.  Hunter testified that, when Menzies made his comment about replacing older workers with younger ones, "we all knew he talking about the [Goodwill] Board of Directors."  (R. Doc. 47, Def.'s Ex. 5, at 215).  Roth testified that "[Menzies] came one day and stated in an open forum to us that they are going to get rid of all you workers and we are going to replace you with a younger bunch. . . .  So that was made verbally to all CDSs that was present that day at that meeting . . . ."  (R. Doc. 47, Def.'s Ex. 6, at 57).

The Court finds that this testimony is sufficient to create an issue of fact as to whether Goodwill's articulated rationale

12

was a mere pretext for age discrimination.  The Fifth Circuit has stated that "for comments in the workplace to provide sufficient evidence of discrimination, they must be (1) related [to the protected class of persons of which the plaintiff is a member]; (2) proximate in time to the terminations; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999) (quoting *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)).  Here, Menzies's comment could satisfy each of these elements.  First, the comment was undoubtedly related to plaintiff's protected class (*i.e.*, persons over forty years of age) as it directly implicated "older" employees.  Second, the comment was made just two months before Hunter's termination.  Third, according to Mire's affidavit, Menzies eventually recommended that Hunter be fired and participated in the meeting that resulted in her termination.  Fourth, Menzies stated that Goodwill intended to replace older workers with younger workers – which is what ultimately happened to Hunter.  Thus, the testimony of Hunter and Roth regarding Menzies's comment could lead a reasonable jury to conclude that Goodwill discriminated against Hunter on the basis of her age.

In the face of this testimony, Goodwill submits the

affidavit of Wanda Jefferson, a career development specialist at the time of Hunter's employment, who avers that she was present at all career development specialist meetings. She states: "I know of no instance when Michael Menzies stated at a CDS meeting that the CDS's were to be replaced by younger workers." (R. Doc. 47, Def.'s Ex. 1). At most, this testimony creates a genuine issue of fact as to what, if anything, Menzies said at the meeting of career development specialists. This is not an issue that the Court can resolve through a summary judgment motion simply because Goodwill presents the contradictory testimony of one of its employees.

The Court therefore finds that plaintiff has, at this stage, carried her burden under the *McDonnell Douglas* framework. Summary judgment is inappropriate as to her age discrimination claim.

**B.   Retaliation Claim**

To survive summary judgment in a Title VII retaliation case, the plaintiff must make a *prima facie* showing: (1) that she engaged in protected activity under Title VII; (2) that she suffered an adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse employment action. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). An employee has engaged in activity

protected by Title VII if she has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. *Grimes v. Texas Dept. of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996).

Hunter contends that her termination was motivated, at least in part, by Goodwill's desire to retaliate against her for two particular incidents. The first occurred in either December 2001 or December 2002, when Hunter alleges that Lisa Alexis, an African-American who was one of Hunter's supervisors at the time, told the career development specialists to take down "black Santas" that had been displayed in the office alongside "white Santas." (R. Doc. 47, Def.'s Ex. 5). Hunter contends that she publically objected to Alexis's order through conversations with her co-workers and Alexis's assistant. (*Id.*). The second incident occurred on November 12, 2003. Hunter was issued a disciplinary notice for engaging in "conversation in the breakroom which led to negative political opinions." (R. Doc. 47, Def.'s Ex. 4-D). In the notice, Alexis wrote: "I've reiterated to Mrs. Hunter that is our expectation that staff will refrain from any conversation that projects a negative or non-supporting position regarding leadership and administration with

the City of New Orleans." (*Id.*).

Pretermitting the issue of whether these incidents even constitute protected activity under Title VII, the Court finds that Hunter has failed to establish a *prima facie* case of retaliation through evidence of these two incidents because Hunter cannot satisfy the "causal connection" standard. Courts have consistently held that events giving to a retaliation claim must not be too attenuated from the adverse employment action. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.") (internal quotation omitted)); *see also Mayberry v. Mundy Contract Maintenance Inc.*, 197 Fed.Appx. 314, 316 (5th Cir. 2006) (holding that "the lapse in time is too long to establish causation" as to activities that took place two years before plaintiff's termination); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002) (concluding that a five-month period between the protected activity and the adverse employment action was insufficient, on its own, to establish a *prima facie* retaliation claim); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir.

1994) (finding that a ten-month lapse between the protected conduct and the adverse employment action "suggests that a retaliatory motive was highly unlikely). Here, the most recent incident occurred in November 2003, more than one year before Hunter was terminated. Moreover, the Court notes that both incidents transpired before Hunter's supervisors at Goodwill became aware of the deficiencies in her work performance that they cited as the basis of her termination. Absent any other evidence that these two incidents were causally related to plaintiff's termination, the Court cannot find on this record, given the remoteness in time of these incidents to plaintiff's firing, that she has stated a *prima facie* case of retaliation. Thus, summary judgment is appropriate as to this claim.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part defendant's motion for summary judgment.

New Orleans, Louisiana, this __23rd__ day of May, 2007.

_____
SARAH S. VANCE
UNITED STATES DISTRICT COURT